UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| RACHAEL SCHMEES | ) | |
| f/k/a Rachel Black, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 1:18-cv-3606-JPH-DPL |
| | ) | |
| HC1.COM, INC., | ) | |
| | ) | |
| Defendant. | ) | |

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

Rachael Schmees's Account Executive position with hc1.com was
eliminated the same week that she joined the company.  She sued hc1, alleging
that she was fraudulently induced into joining the company with promises of
its financial security and her career success.  *See* dkt. 24.  hc1 has moved for
summary judgment.  Dkt. [89].  For the reasons below, that motion is
**GRANTED**.

**I.**
**Facts and Background**

Because hc1 has moved for summary judgment under Rule 56(a), the
Court views and recites the evidence "in the light most favorable to the non-
moving party and draw[s] all reasonable inferences in that party's favor."
*Zerante v. DeLuca*, 555 F.3d 582, 584 (7th Cir. 2009).

hc1 has provided cloud-based HIPAA-complaint software for the
healthcare industry since 2011.  Dkt. 89-6 at 3 (Brown Dep. at 14–15); dkt. 89-
7 at 3 (Bostic Dep. at 9).  One of the company's groups served the post-acute

care market and signed its first client in late 2015.  Dkt. 89-6 at 4 (Brown Dep. at 17).  It planned to "grow its revenue customer base" in 2017.  Dkt. 89-7 at 5 (Bostic Dep. at 17).  In the fall of 2017, the post-acute care group identified Ms. Schmees[1] as a candidate to be an Account Executive in the group.  Dkt. 89-6 at 3 (Brown Dep. at 13–16).

Ms. Schmees interviewed for the position on October 2, 2017.  Dkt. 93-1 at 36 (Schmees Dep. at 84).  hc1's financial security "was one of the biggest factors" for Ms. Schmees, so she asked several questions about its financial affairs, revenue, and clients.  *Id.* at 108–11 (Schmees Dep. at 313–16).  Chris Brown—hc1's COO—told Ms. Schmees that hc1 was exceeding fourth-quarter expectations, was working on "groundbreaking initiatives," and was "in an ideal position" for Ms. Schmees to thrive.  *Id.* at 35–36, 110 (Schmees Dep. at 83–84, 315).

hc1 offered Ms. Schmees the position on October 24.  Dkt. 89-3 (offer letter).  The offer letter described the employment as "at will," so "either [Ms. Schmees] or hc1.com may terminate the employment relationship with or without notice, or with or without cause at any time."  *Id.* at 4.

After "really struggling with the decision," Ms. Schmees signed the offer letter in late October and resigned her previous job in early December.  *Id.*; dkt. 93-1 at 70, 77 (Schmees Dep. at 151, 158).  While the offer letter contemplated

---

[1] Some evidence refers to Ms. Schmees as Rachel Black; this order follows the operative complaint.

a December 4, 2017 start date, dkt. 89-3 at 3, Ms. Schmees asked to move back her start date, and hc1 agreed, dkt. 93-1 at 95 (Schmees Dep. at 184).

Ms. Schmees traveled to Indianapolis for orientation on December 11, 2017. *Id.* at 52-53 (Schmees Dep. at 102–103). That same day, hc1's board of directors met to discuss financial concerns related to the post-acute care market. Dkt. 93-2 at 68 (Brown Dep. at 76). The CEO—Brad Bostic—and Mr. Brown "recommended to the board that the growth positions in the post-acute care market be eliminated." *Id.* The board accepted that recommendation on December 11, eliminating the group's hiring manager and the positions of four recently hired employees—including Ms. Schmees—who "were focused on selling and servicing the post-acute care market." *Id.* at 11, 70 (Brown Dep. at 19, 78).

Two days later, on December 13, 2017, hc1's human resources department had Ms. Schmees sign a "standard employee confidentiality [and] non-solicitation agreement that . . . all new employees sign." *Id.* at 70–75 (Brown Dep. at 78–83); dkt. 93-3 at 14 (Smith Dep. at 46–47); *see* dkt. 98-1 ("Employee Confidentiality and Non-Solicitation Agreement"). On December 18, 2017, hc1 informed Ms. Schmees that her position had been eliminated. *Id.* at 70–75 (Brown Dep. at 78–83)

Ms. Schmees brought this suit against hc1 alleging fraud, fraudulent inducement, promissory estoppel, and intentional infliction of emotional distress. Dkt. 1; dkt. 24. hc1 filed a motion to dismiss, dkt. 30, which the

Court granted in part and denied in part, leaving only Ms. Schmees's fraud and fraudulent-inducement claims, dkt. 60.

hc1 has moved for summary judgment.  Dkt. 89.

## II.
## Applicable Law

Summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  The moving party must inform the court "of the basis for its motion" and specify evidence demonstrating "the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  Once the moving party meets this burden, the nonmoving party must "go beyond the pleadings" and identify "specific facts showing that there is a genuine issue for trial." *Id.* at 324.

In ruling on a motion for summary judgment, the Court views the evidence "in the light most favorable to the non-moving party and draw[s] all reasonable inferences in that party's favor." *Zerante*, 555 F.3d at 584 (citation omitted).  Indiana substantive law governs this case.  *See Webber v. Butner*, 923 F.3d 479, 480–81 (7th Cir. 2019).

## III.
## Analysis

hc1 argues that it's entitled to summary judgment on Ms. Schmees's fraud-based claims, which allege that hc1 committed fraud in (1) asking her to sign the Employee Confidentiality and Non-Solicitation Agreement even though

it had already eliminated her position, and (2) misrepresenting its financial condition during the hiring process.  *See* dkt. 94; dkt. 98.

### A. Employee Confidentiality and Non-Solicitation Agreement

In her response brief, Ms. Schmees argues that hc1 committed fraud when it "insisted that she sign" its standard Employee Confidentiality and Non-Solicitation Agreement "[d]espite full knowledge that it had no intention of hiring" her.  Dkt. 94 at 16.  She contends that this claim should proceed to trial, even though it was "not expressly allege[d]" in the operative complaint.  *Id.* at 16 n.2.  In reply, hc1 contends that Ms. Schmees has waived the claim and is inappropriately trying to amend her complaint through her response brief.  Dkt. 98 at 4.

Fraud must be pleaded with "particularity," so "a plaintiff ordinarily must describe the 'who, what, when, where, and how' of the fraud."  *Pirelli Armstrong Tire Corp. Ret. Med. Benefits Tr. v. Walgreen Co.*, 631 F.3d 436, 441–42 (7th Cir. 2011) (citing Fed. R. Civ. P. 9(b)).  Here, however, the operative complaint—the first amended complaint—does not allege fraud based on the Employee Confidentiality and Non-Solicitation Agreement.  Dkt. 24; dkt. 94 at 16 n.2.  Ms. Schmees therefore cannot pursue that fraud claim in this action.  *See Anderson v. Donahoe*, 699 F.3d 989, 997 (7th Cir. 2012) ("[A] plaintiff may not amend his complaint through arguments in his brief in opposition to a motion for summary judgment.").

Ms. Schmees nevertheless argues that "the Court may amend pleadings to conform to the evidence," so this fraud claim should proceed.  Dkt. 94 at 16

n.2.  But an amendment to conform to the evidence is Ms. Schmees's responsibility, *see Reynolds v. Tangherlini*, 737 F.3d 1093, 1106 (7th Cir. 2013), and seeking an amendment in a summary-judgment brief through "a passing reference in a footnote . . . [is] improper" and untimely, *Shanahan v. City of Chicago*, 82 F.3d 776, 781 (7th Cir. 1996); *see Johnson v. Cypress Hill*, 641 F.3d 867, 872–73 (7th Cir. 2011).  Ms. Schmees also notes that she raised this claim in a proposed second amended complaint that she sought leave to file after hc1's motion to dismiss was fully briefed.  Dkt. 41; *see* dkt. 94 at 16 n.2.  That proposed complaint, however, was never filed and thus never "became the governing document in the case," *Carver v. Condie*, 169 F.3d 469, 472 (7th Cir. 1999), because her motion for leave to amend was mooted by the Court's ruling on hc1's motion to dismiss, dkt. 60 at 13–14.  Moreover, that order allowed thirty days for Ms. Schmees to seek leave to amend in response to the order, which she did not do.  *Id.*; *see Anderson*, 699 F.3d at 997 (holding that consciously omitted claims "are waived")

Ms. Schmees therefore did not plead a fraud claim based on the Employee Confidentiality and Non-Solicitation Agreement that hc1 asked her to sign after she started work at hc1.[2]

---

[2] The Court therefore does not address hc1's argument that there is no disputed issue of fact on this claim because the Employee Confidentiality and Non-Solicitation Agreement is only "a generic form agreement . . . designed to protect Defendant's trade secrets, client information, and other confidential and proprietary information to which Plaintiff had access."  Dkt. 98; *see* dkt. 98-1.

## B. Financial Misrepresentations Fraud Claim

A fraud claim under Indiana law requires a plaintiff to show: "(1) a material misrepresentation of past or existing fact which (2) was untrue, (3) was made with knowledge of or in reckless ignorance of its falsity, (4) was made with the intent to deceive, (5) was rightfully relied upon by the complaining party, and (6) which proximately caused the injury or damage complained of." *Kesling v. Hubler Nissan, Inc.*, 997 N.E.2d 327, 335 (Ind. 2013). hc1 argues that Ms. Schmees does not cite any representations meeting all of those elements. Dkt. 90 at 16. Ms. Schmees responds that hc1 "painted a picture of a viable company" when instead it was "far from stable." Dkt. 94 at 20. In determining whether there is a triable issue of fact on Ms. Schmees's fraud claim, the Court must apply Indiana substantive law by doing its "best to predict how the Indiana Supreme Court would decide" the issues. *Webber*, 923 F.3d at 482.

Ms. Schmees has designated evidence that hc1 told her during her recruitment that joining hc1 would "be a fantastic step . . . to further her successful career" and that its "sales team was on target to meet its fourth quarter expectations." Dkt. 94 at 20.[3] The first statement, however, is an

---

[3] hc1 also addresses statements that it's a "best place to work," that Ms. Schmees would be "a great asset to add to the team," and that her talent was impressive and she would help hc1 create revenue and "great client experiences." Dkt. 90 at 16–21. Ms. Schmees does not address these statements, but they are statements of opinion so they cannot support a fraud claim regardless of waiver. *See Stenberg*, 505 N.E.2d at 96. The parties also address a statement about hc1 raising "many millions" in investments, but Ms. Schmees admits it was true. Dkt. 94 at 22 (Ms. Schmees's brief noting "the fact that [hc1] had completed fundraising during the course of 2017 . . . making its statements of financial security true and therefore not actionable fraud.").

opinion about the future, so it "cannot be the basis of an action in fraud." *Captain & Co., Inc. v. Stenberg*, 505 N.E.2d 88, 96 (Ind. Ct. App. 1987).  The second—in context—is similarly an opinion.  It was made by Jason Horne, one of hc1's sales employees who started in August 2017—only two months before Ms. Schmees's interview.  Dkt. 89-1 at 58 (Schmees Dep. at 317); dkt. 89-11 at 2.  Ms. Schmees testified that she understood Mr. Horne to be saying that "anecdotally . . . he was doing really well" with "pie-in-the-sky goals" that he thought they would "beat . . . by the end of the quarter."  Dkt. 89-1 at 62 (Schmees Dep. at 330) ("The sentiment [of the comment] was we've got a lot in the hopper right now.").[4]  Ms. Schmees therefore undisputedly understood Mr. Horne's statement as "a subjective statement of opinion" that cannot be "justifiably rel[ied] on."  *Whiteco Props., Inc. v. Thielbar*, 467 N.E.2d 433, 437 (Ind. Ct. App. 1984).

Ms. Schmees also argues that hc1 did not reveal concerns about its post-acute care group during her interview process.  *See* dkt. 94 at 8, 10–11 (collecting evidence on hc1's challenges in the post-acute care market).  She compares hc1 to a car dealer who failed to "fully declare any and all problems" in response to her specific questions.  *Id.* at 20 (citing *Kesling*, 997 N.E.2d at 335).  But that does not show a triable issue of fact for two reasons.

---

[4] In its order on hc1's motion to dismiss, the Court accepted Mr. Horne's statement as an alleged "objective statement of fact," dkt. 60 at 5, but for the reasons above, the undisputed evidence at this stage shows that it was an opinion.  hc1 also argues that no designated evidence shows that the statement is false, but the Court does not address that argument because the statement was not about past or existing fact.

First, all of Ms. Schmees's questions were only about hc1's financials generally. *See* dkt. 93-1 at 26–29, 108–11 (Schmees Dep. at 71–74, 313–16). She asked what large brands hc1 had under contract and about "recurring revenue," "retention and term," "investment structure," and "how they had raised their capital." *See id.* But she has not designated evidence that she asked specifically about the post-acute care market, or that she received false answers to the questions she did ask. *See id.* Indeed, she testified that she could not remember several answers that hc1 gave during the interview process. *See id.* at 29, 32–33, 36 (Schmees Dep. at 74, 80–81, 84). Without specific designated evidence in support, her impression that the hc1 team "had the potential to be profitable, long standing and successful" does not support a fraud claim under Indiana law. *Id.* at 101 (Schmees Dep. at 190); *see Jones v. Oakland University*, 122 N.E.3d 911, 918 (Ind. Ct. App. 2019) ("Neither may a claim of actual fraud be based on 'broken promises, unfulfilled predictions, or statements of intent which are not executed.'").

Second, at the time of Ms. Schmees's interview, hc1's challenges in the post-acute care market had not fully developed. hc1 knew that Main Street— one of its major post-acute clients—had overdue payments of nearly $700,000, but hc1 was in frequent communication with Main Street and believed it would be paid. Dkt. 93-2 at 20–21, 59 (Brown Dep. at 28–29, 67). The other major post-acute contract—American Senior Communities—"was largely onboarded" and hc1 "was looking to grow the post-acute care market" with new, smaller customers. *Id.* at 16, 19 (Brown Dep. at 14, 27). It wasn't until November

9

2017—after Ms. Schmees's interview and after she signed hc1's offer letter—
that hc1 unexpectedly lost a major non-post-acute care account, heightening
the need to reduce expenses. *Id.* at 64–65 (Brown Dep. at 72–73). So, "[l]ate
[in] the week of December 8th [2017]," hc1 executives discussed eliminating the
growth positions in the post-acute care market. *Id.* at 65–66 (Brown Dep. at
73–74). They made that recommendation to the board on December 11, and
the board agreed that day. *Id.* at 68–70 (Brown Dep. at 76–78).

In short, Ms. Schmees's fraud claim relies primarily on red flags in the
post-acute care market that hc1 did not reveal during her interview. But the
designated evidence does not show that she specifically asked about those
areas or that hc1 thought, at the time of her interview, that its concerns
affected the viability of the entire group. And the board's decision to eliminate
the post-acute care segment's growth position occurred more than two months
after her October 2017 interview. *See* dkt. 93-4 at 9–10 (Bostic Dep. at 21–22).
So even if hc1's statements during Ms. Schmees's recruitment were intended to
convey the company's strong position at that time, the situation had changed
by December 2017, undermining Ms. Schmees's fraud claim. *See Jones*, 122
N.E.3d at 919.

The facts here are quite different from the facts in the *Kesling* case cited
by Ms. Schmees in support of her position. 997 N.E.2d 327. There, Ms.
Kesling asked why a car she wanted to buy had a rough idle, and the
salesperson responded that it "just needs a tune-up." *Id.* at 335. But the car
actually needed extensive repairs. *Id.* The Indiana Supreme Court held that

Ms. Kesling's fraud claim survived summary judgment because there was evidence that the salesperson knew his statement was false and was required to disclose problems with the car in response to Ms. Kesling's question. *Id.* at 335–36. This case, however, is not about a false answer to a simple question about property. It's about a recruiting pitch to Ms. Schmees, encouraging her to join a young, tech-oriented company. *See* dkt. 89-7 at 3 (Bostic Dep. at 9). In that context, the designated evidence does not show misrepresentations or omissions of past or present material facts, as required to support a fraud claim. *See Kesling*, 997 N.E.2d at 335; *Am. United Life Ins. Co. v. Douglas*, 808 N.E.2d 690, 703 (Ind. Ct. App. 2004).[5]

There is therefore no triable issue of fact on Ms. Schmees's fraud claim under Indiana law.[6]

\*     \*     \*

Of course, it is understandable that any employee would be shocked, disappointed, or angered if the position that she had been hired to fill was eliminated during her first week of employment. But fraud claims must be pleaded with particularity under the Federal Rules of Civil Procedure and, to survive summary judgment, must be supported by designated evidence that allows a reasonable jury to find in the plaintiff's favor. Here, Ms. Schmees's

---

[5] The Court therefore does not address hc1's argument that Ms. Schmees could not have reasonably relied on the statements.

[6] Ms. Schmees's fraudulent inducement claim requires at least the same elements as her fraud claim, so hc1 is also entitled to summary judgment on that claim. *See* dkt. 60 at 7–8; *Tru-Cal, Inc. v. Conrad Kacsik Instrument Systems, Inc.*, 905 N.E.2d 40, 44–45 (Ind. Ct. App. 2009).

fraud claims do not meet those standards, so hc1 is entitled to summary

judgment.

**IV.**
**Conclusion**

hc1's motion for summary judgment is **GRANTED**.  Dkt. [89].  Final

judgment will issue in a separate entry.

**SO ORDERED.**

Date: 1/13/2022

_James Patrick Hanlon_
James Patrick Hanlon
United States District Judge
Southern District of Indiana

Distribution:

Richard M. Blaiklock
LEWIS WAGNER, LLP
rblaiklock@lewiswagner.com

Thomas E. Deer
OGLETREE DEAKINS NASH SMOAK & STEWART, P.C. (Chicago)
thomas.deer@ogletree.com

Aaron D. Grant
LEWIS WAGNER LLP
agrant@lewiswagner.com

Michael Dean Heavilon
LEWIS WAGNER LLP
mheavilon@lewiswagner.com

Carol A. Poplawski
OGLETREE DEAKINS NASH SMOAK & STEWART, PC
Carol.Poplawski@ogletree.com

Charles R. Whybrew
LEWIS WAGNER LLP
cwhybrew@lewiswagner.com